We'll hear argument next in Case 18-266, the Dutra Group v. Batterton. Mr. Waxman. Mr. Chief Justice, and may it please the Court, in Miles, this Court emphasized that when Congress enacted the Jones Act, it took principal responsibility for fashioning remedies for injured seamen. And again and again, this Court has followed Congress's lead— Sotomayor I thought the Jones Act directly says that it's there to supplement whatever the remedies were, not to take remedies away. It was there to give more protection to seamen, not less. Waxman So the Jones Act doesn't say anything about remedies— Sotomayor But our case law has said it repeatedly. Waxman What this Court said just a few years after the Jones Act was enacted was that the Jones Act provides, vis-à-vis unseaworthiness, alternative grounds for recovery of a single cause of action. And the Court also said in Mitchell v. Trawler-Racer several years later that with the passage of the Jones Act, Congress obliterated all distinctions between the kinds of negligence for which shipowners are liable. And it's important— Sotomayor But that doesn't tell me that their intent was to take away common law remedies. And I thought that's what Townsend said, which is, if unless there is some proof, contrary evidence, those common law remedies still remain. And so my question is, that's a different statement than what you started with. That it's the exclusive remedy. Waxman No. I think my — I'm not sure that it is a different statement. The question is, this Court has made clear, not only in this area of the law, vis-à-vis the Jones Act, and in cases like Moraine and Monick and Miles itself, that when Congress exer—but also in cases like, and I point the Court to the Court's decision in Milwaukee v. Illinois, in which the Court stated the general—broader rule, that when Federal—when this Court sits as a Federal common law court and announces and expounds the scope of Federal common law remedies, it has the authority to do that interstitial lawmaking function. But when then Congress then comes in and legislates in that particular area and sets out particular remedies, the previous scope of the common law remedies subside. That's exactly what this Chief Justice Rehnquist explained for the Court in Milwaukee, and it's what happened in this case, and it's what ought to happen in this case. Now, as to Townsend, Townsend is very much not to the contrary, because it is — it is a tremendous difference in several dimensions. First of all, and most fundamentally, unseaworthiness is a substitute for Jones Act negligence, while maintenance and cure, as this Court in Townsend— Sotomayor, there are different elements to unseaworthiness than there are to ordinary negligence. There's different standards. It's a different cause of action. The remedies may overlap, but not the cause of action. At the time that the Jones Act was enacted, the contours of the particular cause of action differed significantly. The Jones Act was much — reached much broader. But this Court nonetheless said in the 1920s, in Phillips and in Townsend and Baltimore Steamship, that — and Peterson, rather, that this — what Congress did was to legislate an alternative grounds for the recovery of a single cause of action. And this Court explained right away if a— Ginsburg. Mr. Waxman, if I can interrupt you there. I thought the main reason for the Jones Act was that there wasn't, under the unseaworthiness doctrine, a simple case of negligence. A fellow crew member acts negligently and injures you. There was no unseaworthiness remedy for that. And so Jones came in to create a negligence remedy that didn't exist before. It had nothing to do with the fitness of the ship. Waxman. I agree with that articulation that this Court rendered in the Osceola in 1905 and as to which the Jones Act was addressed. There are several points. Number one, following the enactment of the Jones Act, this Court, in a succession of cases, at least five times beginning in 1944 in the Mocknick case, expanded and revised the contours of the unseaworthiness remedy so that it now is — and, Justice Sotomayor, we'll get to you on the incremental differences between the two — so as Gilmour and Black said several decades ago, it is a — It's even a little bit better sometimes, right? I mean, it's a strict liability offense, isn't it? So it's — it's not — it is frequently said that it is a strict liability defense, whereas the Jones Act is a negligence standard. Both of those terms are somewhat misleading in application. Every court that has considered the question and the treatise writers say that negligence under the Jones Act is what's called featherweight negligence. It barely meets any standard of negligence, whereas in Mocknick, in which this Court — to which this Court has said imported a strict liability standard under seaworthiness, what Mocknick said was, we are not going to recognize the fellow-servant rule because it's not recognized in the Jones Act. I mean, maybe — I guess one of the points in your brief that confused me, and maybe you're kind of providing an answer to it, but I'll just — you say several times in your brief that the unseaworthiness action really has evolved, changed quite a bit since the Jones Act, and I would think that if you are right as to your basic theory, which is that the Jones Act is a signal to courts to stop doing stuff because the Jones Act is now taking over the field, essentially, if you are right as to your basic theory, how is it possible that this action of unseaworthiness could have changed as much as you admit that it did? Waxman, Well, there are some differences, as Justice Sotomayor — there were reasons why the Court, when it enacted the Jones Act, didn't preempt other existing Federal common-law remedies. And the situation of preemption and the effect of a statutory scheme of remedies vis-a-vis preexisting common law is markedly different when the common law is Federal rather than State. But, for example, even to this day, the defendant in a Jones Act case and the defendant in an unseaworthiness case may be different. The former is the employer, the latter is the shipowner, and sometimes they are not the same. In Jones Act cases, you have an absolute right to a jury trial. In unseaworthiness cases, you sometimes do and sometimes don't, depending on whether there is diversity of citizenship. But if I can just — I realize I'm talking— When does the Jones Act say, stop, don't do stuff, to courts? And when does it allow courts to keep thinking about revising, developing these common-law actions? Waxman, Well, I think this Court came pretty close to attempting to articulate that line in Miles itself, where it says, and I'm quoting from page 27, In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Kagan. And I guess what I'm asking is, how is that kind of flashing yellow light, which I agree with you. That sounds like a flashing yellow light to me. How is it consistent with all the changes that have occurred in the unseaworthiness action? Waxman. And what you see is that the effectuation of those sentences I just read in Miles itself, in light of the scope of the Jones Act, Congress not only eliminated in Mocknett the — for unseaworthiness, the defense of fellow servant, and then eliminated in light of the Jones Act the defense of contributory negligence under unseaworthiness. But in Miles, following Moraine, the Court said, well, the Jones Act recognizes a wrongful death remedy for claims under the Jones Act, and because the Jones Act and unseaworthiness are just twin causes of action for the same injury, we will  recognize recoveries in wrongful death in cases broader than unseaworthiness. Now, importantly, what happened was, after this Court decided Moraine and said, well, the Jones Act allows a recovery for wrongful death and unseaworthiness, so we're going to, too, the question then came before the Court in Sealand Services v. Gaudet, well, what does that involve? Like, what are the remedies that you get for wrongful death? And what this Court held was that the remedies you get for wrongful death include the loss of society. The next case that comes along is Mobile Oil v. Higginbotham, raises the wrongful death for unseaworthiness, but for a wrongful death that occurred on the high seas. And this time what this Court says is, well, the Death on the High Seas Act doesn't only allow for recovery of pecuniary damages, loss of society is not pecuniary damages, so we need to constrict the Federal common law remedies that we recognized in Gaudet in cases that occur on the high seas. And then finally, in Miles, the Court gets the same question, loss of society for, you know, for somebody who is a Jones Act seaman. And what the Court says is, under the Jones Act, which is the twin cognate cause of action for loss resulting from wrongfully caused injury, we don't allow loss of society damages, and therefore, again, notwithstanding the broader ruling in Gaudet, which took place in an environment in which there was no congressional limitation, once again we're recognizing the limitation. Now, I do want to get to the point.  I don't think there's any historical history that there was no, before Death on the High Seas Act, there was no such remedy. Well, the three cases that I identified just now, Justice Ginsburg, were wrongful death cases, although Miles itself also included a claim for a right of survivorship, which is a form of injury. And once again, the Court said the Jones Act sets the limits for common law recoveries for injury or death, the Jones Act seaman, and held on the injury side of it that the representative of the deceased pursuing a personal injury action on behalf of the deceased could not recover future lost wages because the Jones Act doesn't allow it. Now, in Monick, it was not a wrongful death case, and the other cases which are cited in, I believe it's footnote 5 of your opinion in Usner, which relate all the respects in which, in light of the Jones Act, this Court changed, modified both the contours of what unseaworthiness constitutes and the remedies available. Now, I do want to get to, I think it was, Justice — I can't remember whose question it was about Townsend and the other distinction of Townsend, because even if Miles didn't exist, and even if Miles didn't import into this case the constitutional commands of separation of power and uniformity in maritime law, in Townsend, what this Court said was, look, maintenance secure is an ancient remedy that goes back at least until the 13th century, if not before. It is a — it reflects a fundamental humanitarian imperative to provide sustenance and care for seamen who fall ill during the voyage. And this Court said at common law, in particularly egregious cases, punitive damages were available. In certain maritime actions, which the Court identified, punitive damages, if not awarded, there is at least language suggesting that they could be awarded against the malfeasor. And we, if we look at maintenance and cure, we don't see any reason to create an exception because, as the Court explained in section 2C of its opinion over pages, let's go back and look. There were treatise writers, I believe three different treatises, that recognized that punitive damages were available for egregious refusals to provide maintenance and cure. There were decided cases, the Troup and the Carlisle. In the — at the same time, there is nothing, no evidence whatsoever that punitive damages were ever even sought, much less awarded, and we know why. Sotomayor, any counter-evidence? Waxman, excuse me? Sotomayor, any counter-evidence? Waxman, well, here's the counter-evidence, and it's revealing, it's reflected in one of the principal cases that my friend is relying on as an example of punitive damages in unseaworthiness cases. It's a case called the Nottleburn. It's also, I believe, yeah. The Nottleburn was a case in which it was brought in for unseaworthiness and for maintenance and cure. The Court held, with respect to unseaworthiness, that, quote, there was actual knowledge of the unsound and unseaworthy condition of the vessel, coupled not only with willful negligence, but wanton indifference. And yet, in the Nottleburn, the Court considered and discussed the possibility of awarding punitive damages for the failure to provide maintenance and cure, but not for unseaworthiness. Now, I can't cite you a case, either before the Jones Act was passed or after decades after, in which a court said, we've been asked to apply punitive damages because the conduct that constituted unseaworthiness was egregious. I can't find a case in which punitive damages were even requested. And if you look at, and this Court certainly has a rich body of unseaworthiness decisions between the 1880s and the present time, there are case after case of what is reported as shocking, egregious conduct, in which there is no reflection in the briefs or in any of the opinions that punitive damages was even sought. And a reason may be, and this is the other Townsend-related reason I want to address. Prior to, we have a somewhat of a disagreement between us as to the exact date at the very end of the 19th century in which any court first recognized that compensatory damages could be paid to an injured seaman for failure of seaworthiness, but at least until the middle 1880s, at a time when the treatises and the cases were saying, you can get punitive damages for a willful refusal to provide medical care to an ill seaman, you couldn't even get under unseaworthiness compensatory damages. The remedy for unseaworthiness to a seaman was the privilege to refuse to embark on a vessel that was unseaworthy and yet to claim your wages. And that's the reason. That's the major distinction if we're talking just on Townsend terms, that unseaworthiness is so different than maintenance and cure. On the one hand, you've got treatises that say you can get punitive damages, it's a given. You've got cases that are either awarding or considering punitive damages for the failure to provide maintenance and cure, like the Nottle Burn. And at the other hand, from the other side, for all these centuries, at least up until a couple of cases decided at the end of the 19th century, for unseaworthiness, no matter how egregious, there was no right of personal compensation. Kagan. And were there cases where it was quite egregious? Because I was thinking about this and thinking maybe it just wouldn't come up, because an unseaworthiness action is basically you've taken deliberate action to ensure that your own ship sinks. So most people don't want the ship they own to sink, right? So, you know, it might just be that when people bring this kind of action, they're not bringing it on the basis of the kind of behavior that would justify a punitive damages award. Justice Kagan, I have read you the Court's opinion in the Nottle Burn, which finds that the ship owners not only knew of the unseaworthy condition, but they were. Well, I do think that my question is not answerable by pointing to a single case. Okay. So I can I give you just a couple of other examples in support of my assertion that there are many, many cases that the Federal courts and this Court have looked at in which the findings of seaworthiness indicated egregious conduct. The first one is the now, I guess for purposes of this case, the Rolfe, about which much ink is spilled in the briefs about whether it did or didn't involve punitive damages for the, as explained in the documents that we've sought permission to lodge, there is no question that the damages awarded in that case and sought were compensatory, but the opinion of both the court of appeals and the district court in that case demonstrate and found an extreme case of unseaworthiness on the part of the ship owner in. But the owner of a ship is not mostly, generally isn't going to be on the ship. So if it sinks, the owner is probably not going to be one of the ones that drowns. So if the owner does a cost-benefit analysis of the cost of getting a better ship or repairing the ship versus the amount of money that could be obtained from going ahead with a voyage using that ship, is that always going to come out in favor of safety? Is it generally going to? Did it always come out in favor of safety in the 19th century? So I would suggest, I mean, I didn't live in the 19th century, and although I feel like at this point I've read most of the cases decided in the 19th century, I haven't seen policy discussions on this point, but I will say that when Congress enacted the Jones Act, and for that matter, when Congress enacted FILA, I mean, the owners, the corporations that owned railroads weren't riding on the railroads themselves, Congress made an obvious policy judgment to create, to not go all the way to a workman's compensation statute where if you're injured, you just file a claim in front of a State administrative agency and you get the following kinds of recovery, but not many others. But that is the spirit of what FILA and the Jones Act did, which is to provide a much broader, much more certain remedy, sweeping away the defenses of assumption of risk and contributory negligence and the fellow-servant rule in exchange for a judgment that in dealing with the policies and the thinking of what went on in people who ran railroads and ran steamship companies and people who worked there, Congress's choice was to say very easy, streamlined recovery for compensatory damages, no recovery for punitive damages. And you know, for me, it's not pecuniary. It's not pecuniary. And so, for example, in cases like Miles, in a suit brought for, in a claim of wrongful death for unseaworthiness, there's no pain and suffering recovery. But in a claim for injury that is maintained by, in a survivorship action, pain and suffering is recoverable. And, you know, one of the many anomalies that would occur if this Court were to affirm the Court below and find that although punitive damages are not available under the Jones Act, they are available for unseaworthiness. Ginsburg. This Court has never held that, has it? That's right. For 111 years, the treatise writers and courts have all been unanimous that punitive damages are not available under the Jones Act. We've reserved that question. Excuse me? We've reserved that question. You did reserve that question. So that's still an open question. Well, I mean, it is an open question in this Court. At the time that the Jones Act was enacted, there were multiple treatise writers who said under FILA punitive damages aren't available. This Court, although not deciding it, had said on several occasions that for injury for a railroad worker, the remedy was compensation. And indeed, in the St. Louis and Iron Mountain Railway Company, which was not a wrongful death case, it was a survivorship case, this Court said that the remedies under FILA were, quote, confined to compensatory loss. I agree that this Court is not so decided. Sotomayor, so why did you in your brief say that FILA and the Jones Act bar on compensatory damages could include non-pecuniary losses? Well, there's a dis so. And that the non-pecuniary recovery for, I don't have, we don't have a position on whether pecuniary damages are not, whether pecuniary damages are available under the Jones Act or not. The way that came about is pecuniary damages are not available under the Death on the High Seas Act. That led to a determination by this and other courts that under the Jones Act, non-pecuniary damages are not available in wrongful death cases and therefore are not available in unseaworthiness cases. And the extreme anomaly that would, that is being invited in this case is what the other side asked for is, okay, look, we know that if an injured seaman dies, he can't recover under the Jones Act and therefore under unseaworthiness for, it can get, punitive damages won't be awarded, but because they say there's no pecuniary damage limitation in injury actions, if he doesn't die, then punitive damages can be awarded. And I would respectfully submit there is no policy imperative to create that anomaly. Two ways we can look at this, one is the Miles precedent, Jones Act, twin causes of action, the other is Townsend says punitives have historically been available and awarded in general maritime actions. Questions which of those principles to follow here? Where does the special solicitude for the welfare of sailors principle factor in to how we should think about that, or does it factor in? I think it factors in exactly, I mean, this Court has said over and over again that the special solicitude, the wards of the admiralty, does not dictate a result that the seaman always wins, otherwise you wouldn't have had a situation at the time that that phrase was coined in which seaman could get no compensation at all for any injuries and or if they died or anything like that. The way to find your way through this is the way that Miles explained it, which is, yes, the Jones Act and this Court following the lead of the Jones Act has greatly broadened the amount of compensation that injured seamen can recover. That is a reflection of Congress's solicitude and this Court's admiralty law solicitude. It doesn't mean that you add punitive damages onto that. May I reserve the balance of my time? Roberts. Certainly, counsel. Mr. Frederick. Thank you, Mr. Chief Justice, and may it please the Court. Our position is that punitive damages are available under the general maritime law for claims that a vessel is unseaworthy. Our argument rests on two points. First, punitive damages have long been available under general maritime law, and there is no evidence of cases precluding punitives in unseaworthy claims prior to the 1920 of the Jones Act. Except that it's not like Townsend where there were at least two cases where punitive damages were awarded. I really don't see a case where it was clear that it was awarded for unseaworthiness as opposed to maintenance and cure, number one, and there aren't any treatises that affirmatively say that punitive damages were awarded for unseaworthiness. That's a somewhat different historical picture. It's slightly different, Justice Sotomayor, but I would say that what the Court decided in Townsend, which controls here, is does the general rule of allowing punitive damages apply unless there's some express caseholding that says otherwise or Congress expressly said otherwise. And certainly the discussion that my friend offers of the Nottle burn indicates that the Court was considering whether to give exemplary or punitive damages in that case. It was a case where there was a fraying rope, the sailor fell to significant injuries. The Court said it's a close question whether to give exemplary damages on this record. I'm deciding not to do that. Now, if you want to say that there's a difference between a discussion, which this Court in Townsend gave several examples of discussions of exemplary damages, certainly Justice Story in the amiable Nancy offered that giving exemplary damages was important, and the reason why it was important was for the reason that Justice Alito adverted to, which is that the vessel owner needs to be held to a higher standard so that when the vessel owner chooses to over-insure, a rust bucket is not sent to sea. And that policy point is quite important in these particular cases, because it's important because even though these situations are extremely rare, the cases have always talked about the availability of exemplary damages. And there's an 1850s case called the Golden Gate where a what would be deemed now to be an unseaworthy condition injured passengers, and the passengers, instead of bringing a suit for unseaworthiness, brought it for breach of contract. And the judge there said essentially, had this been brought as an unseaworthiness case, I would have awarded exemplary damages, but I can't do that because contract claims have never allowed for exemplary damages. Sotomayor, is your adversary right? I mean, adversary. I mean, he's my friend. Mr. Waxman, right, that the remedy for unseaworthiness was for a period of time only the ability to collect wages? The yes. And when did that change? It started to change in the 1800s. And this was an importation of a rule that was adopted in Great Britain where, although the concept of unseaworthiness existed from the founding of our Republic, and there are cases from 1789 that we cite that say an unseaworthy condition would be an excuse for the crew member to decide not to go with the ship on the voyage. That principle expanded during the 1800s through decisions in Great Britain to allow for compensation for the injury to the seaworker as a result of the unseaworthiness condition. Those cases were then adopted by courts in this country. And in the Nottleburn, Judge Deedee, a district court judge in Oregon, explains where all of this came from. And he explains that this idea of unseaworthiness leading to a compensatory type principle was one that was designed to protect the crew members as wards of the admiralty. And so by the time of the Osceola in 1903, this Court said it is well settled by the decisions of the lower courts that an injured worker from an unseaworthiness condition can obtain compensation both for the unseaworthiness of the vessel as well as for a failure to provide maintenance and cure. Those principles, I think, were very well established well before the Jones Act was enacted. And nothing in the Jones Act itself points where Congress would have said that punitive damages, the general rule of the common law or the general maritime law, are not available. Now, importantly, my friend starts to talk about some of the differences between the unseaworthiness claim and a Jones Act claim, but he only got so far, it is true in an important difference that the defendant is a different person or entity in an unseaworthiness claim versus a Jones Act claim. In a Jones Act claim, the defendant is the employer. In an unseaworthiness claim, the defendant is the owner. But it is also important that the plaintiff could be different as between those two claims. And here is a very significant difference between Townsend that works in our favor. Whereas in Townsend, a maintenance and cure claim would overlap entirely with a Jones Act claim, that is not true for an unseaworthiness. A passenger could bring a claim for damages in an unseaworthiness action if the unseaworthiness was a substantial cause of the passenger's injury. The Jones Act only speaks to the relationship between employees and employers. You are not disputing that they are often referred to as twin causes of action? No, they are not. And this discussion started in the Cortez in 1930-ish and followed in Mitchell. And the reason why they are considered that way is because, as my friend points out in the Peterson case, this Court announced the rule that you can't get double recovery. We are not asking for double recovery. Just as in any common law claim where there is a statutory claim, you have one injury, you can only get one recovery for that. So you are basically asking us to put on our common law hat and decide that punitive damages are a good thing, because there isn't any case pre-Jones Act saying that you could get – that you could get punitive damages for unseaworthiness. And no court of appeals that I'm aware of has ever held that you can get it, get them under either FIWA or the Jones Act? Your Honor. Is all that right? Let me step back and say first that what this Court decided in Townsend, we think, controls, and that if you were to substitute maintenance and cure for the words unseaworthiness in almost every paragraph of the first three parts of the Court's decision in Townsend, you would come to exactly the same result, the exceptions being a couple of the cases where we would offer to substitute in a few unseaworthiness cases versus a couple of cases that were outside. Now, if there were an established general rule in maritime cases that you get punitive damages, how do you account for the fact that there weren't cases awarding punitive damages for unseaworthiness? How did this general rule escape everybody's attention? It didn't escape everybody's attention for the cases that we cited in our case where the Court considered whether to award them, but decided on the basis of the special facts there not to do so. I would submit that having punitive damages available has been a very powerful deterrent to vessel owners not providing seaworthy vessels, and that's a good thing. Alito, I mean, I think I wasn't around in the 19th century either, but I think in then and earlier there were an awful lot of very unseaworthy vessels that were sent out to sea by owners, and they just took the risk, and it wasn't their life that was at stake. And so it would be – it seems strange that there wouldn't be punitive damages claims in those cases, in any unseaworthiness case. Well, I – there were claims, certainly, and the Nautilburn is an example of that. The Golden Gate is an example of that. The Rolfe is an example of that. Well, there weren't holdings. There weren't courts that awarded punitive damages. That is true, but the fact that they are awarded rarely does not mean that the Court has said, as a matter of law, I don't have the discretion or the power to award it. And that was the very important point, I think, that this Court drew out of Townsend, that the fact that there is a general background rule that doesn't come into play very often is not a situation where one needs to be concerned. And the fact that you have a deterrent out there serves as a very powerful situation, particularly in an environment now where you have overlapping employers having operations on various vessels. Cruise ships are a very good example of that, where you might have multiple employers who would have – give rise to Jones Act remedies in various circumstances for not providing a safe workplace. But there's – I mean, you're talking about, you know, sending rust buckets out to sea and all these things. I mean, most of the unseaworthiness cases are the hatch that isn't – doesn't close right or something like that and injures it. But maintenance and cure is something very different. Maintenance and cure is you're talking about somebody who can't do anything for himself, who's seriously injured or isn't taken care of, and you can understand maybe allowing punitive damages in that situation, but not necessarily in the other. Well, Your Honor, I think that they're both egregious situations, and I would not want to fight the premise of your question that the willful withholding of maintenance and cure is egregious, because it certainly is. But in Townsend, what the Court held was that just because there's overlap between the willful withholding of maintenance and cure does not mean that, with the Jones Act remedy, does not mean that the Jones Act remedy forecloses the ability of obtaining punitive damages for that. Certainly, in situations where a vessel is not reasonably fit for its intended purpose because of its own – But that includes the situation I discussed, right? If you had a hatch that didn't fully close and, as a result, there was an injury, I mean, that's, you say, not fully fit for its purposes. I mean, that would cover that. That would be called unseaworthy. But maintenance and cure is met only in far more egregious circumstances, isn't it? Your Honor, I think that the key question, if I could take you to this place in the same kind of wantonness, is what we're talking about in the unseaworthiness situation, where, as in this case, air pressure was not vented in any way, and the vessel acted in a wanton or willful way with conscious disregard of the safety. So really what we're talking about are those situations in maintenance and cure where the captain or the master of the vessel is acting in a wanton way that causes the danger to the crew member to exacerbate. The same kind of wantonness is what we're talking about in the unseaworthiness situation, where, as in this case, air pressure was not vented and instructions for the safe use of this vessel were not even given to the master of the vessel. And that's the kind of wantonness that we're talking about here that should be deterred and prevented. Ginsburg. Mr. Frederick, one thing that I think is undisputable is that the evidence is very slim that there were punitive damages, in fact, awarded for unseaworthiness claims. I mean, you can't dispute that. The evidence is slim. I would agree with that, Justice Ginsburg. And you would also agree on the Jones and Fila that the courts of appeals have been uniform in saying no. That I don't agree with. What I'm informed, there have been a couple of court of appeals decisions that have talked about the FILA and the Jones Act. But remember, about 70 percent of these kinds of cases arise in State court. And most State court judgments are not with reported decisions. And what I'm informed by, lawyers who filed amicus briefs on our side of the case, is that they have obtained, on occasion, punitive damages awards in State court proceedings that have not led to reported judgments and not been appealed, and that have been paid. Now, these are not runaway fees. Sotomayor, we also have four court of appeals who have given punitive damages for unseaworthiness. They're listed in Petitioner's brief. That's correct. And we – but my point is that the existence of punitive damages on unseaworthiness cases in those circuits that have been there for decades, the fact that nearly 10 years has now elapsed since Townsend, we don't have runaway juries for maintenance and cure claims, this Court in Exxon v. Baker noted the literature and said it's in fact not the case that in those rare circumstances when punitive damages are awarded that there has been some disproportionate problem of runaway. And I would offer you that in Exxon, this Court considered a question closely analogous to the one here, which is whether or not the penalties under the Clean Water Act for pollution displaced the general maritime law general rule of punitive damages. And every justice said no. Breyer, I just want to make my list. I'm making a list of differences between Jones Act and seaworthiness. Yes. And it seems to me everybody's agreed that the standard of liability doesn't really make much difference. That's not correct. All right. Well, let me list the three I have. Okay. And then go back and tell me what I'm missing. Sure. All right. The three I have is, one, the jury. Yes. Number two, the shipowner versus the employer. Yes. And number three is you say passengers can sue. I don't know if there are a lot of passenger suits or not. Okay. That's what I have. What else should I have? The liability standard is different. It's negligence versus whether the vessel equipment is staffing for an unfit purpose. The causation standard is different. For an unseaworthiness claim, the unseaworthiness has to be a substantial or approximate cause of the injury. Under this Court's decision in CSX v. McBride, it is a more relaxed causation standard. So whereas in the unseaworthiness claim, you have essentially a strict liability standard for the unseaworthiness condition, but a higher causation standard, in the Jones Act you have a more rigid negligence standard for liability, but a more relaxed causation standard. And so there are circumstances, and let me give you an example of one, where the vessel owner might provide, get a brand-new piece of equipment, put it on the vessel, it goes out to sea, but it doesn't work. There is no negligence in that circumstance because the vessel acted with due care. There is an unseaworthiness condition because the equipment did not perform as it was intended to for its suited purpose. And so you can see in an example where if the equipment was what caused the injury, you would have a seaworthiness claim on one hand, but you would not have a Jones Act claim on the other. The last difference that I would point to is that for an unseaworthiness claim, you can get a maritime lien and attach the vessel, and that is an ancient remedy that is designed to ensure protection of the ward of the admiralty. You cannot attach the vessel in a Jones Act claim. And so if you are looking at these just strictly from a bottom-line perspective, what the Court recognized in Patterson and in Cortez and in Mitchell is that the worker very often brings all three claims, maintenance and cure, unseaworthiness and Jones Act, but that can only lead to one remedy, and then the Court will decide after the conclusion of the proceedings, you know, what that is, but the owner is not going to have to double recover. But for those reasons, it's very important for the Court not to take the view that simply because there is substantial overlap, it's not a uniform. Breyer, giving me about passengers, are there a lot of passenger suits? I don't know that, Your Honor. What I would also say is that there are not, because you would probably know that. No, that's correct. But also there are situations where other employees of other entities would have an unseaworthiness claim, and let me give a prosaic example, if I might indulge the Court. Say you've got a cruise ship that's owned by a particular cruise line, but they subcontract out to a Broadway company to have a traveling music show on the cruise ship. Now, under the Jones Act, it's the Broadway company that is the employer of the musician. But if the unseaworthiness condition causes an injury to that worker, that worker has a suit against the owner of the vessel for the unseaworthiness causing the condition, but not a Jones Act remedy against his or her employer for that particular injury. And so you can see that there's overlap, but it's not a perfect overlap. Kagan. So how do you think, Mr. Frederick, we should think about the question of the relationship between the Jones Act on the one hand and the common law maritime function on the other? Because there is this language in Miles which seems to say broadly that given the Jones Act, given that the Jones Act exists, courts should be wary of doing things with their common law hat on. So how should we think about that? What's the line? Frederick. Well, here's the line. First, start with a statute. What the statute says is that the injured worker can elect remedies, and what the statutory language was meant to preserve the preexisting common law remedies. Where wrongful death comes in is kind of an historical anachronism, and it resulted from, frankly, a mistake of this Court in the Harrisburg, which wasn't recognized for some 90 years until Moraine was decided. And that mistake in the Harrisburg, which held that wrongful death claims are not statutory fixes that were arose in State legislatures, as well as Congress, through the Death on the High Seas Act, the special wrongful death provision of the Jones Act, and then ultimately this Court's reassessment of the correctness or incorrectness, as it were, of the Harrisburg and overruling it in Moraine. And so by that time, what the Court decided was that in the area of wrongful death, which is where Congress is legislating. Kagan in some parts, at least, does not read like a one-off. It reads like a general statement about the relationship between the Jones Act and the common law, maritime law. Well, in Townsend, the Court did explain not that Miles is a one-off, but that it is proper and should be viewed within the context in which it arises. And it was that special context that Townsend was able to rule that because of the special progeny of the way wrongful death occurred. Because remember, wrongful death claims were not cognizable at the common law. Personal injury claims were. And so if you want to draw a line right there, you have a very distinctive history between wrongful death and survivorship. My friend points out that the survivorship part of the Miles holding, that also was not a claim recognizable at common law. And the reason was this very strict view that the law was there to protect living persons, and it was not there to compensate people who had died. Isn't that an anomaly, as Mr. Waxman says, though, if we were to agree with your position here? No. I think that the anomaly actually works in the other direction, because the fact that many State courts, and there are footnotes in our amicus briefs that point out there were, you know, dozens of State courts that recognized punitive damages for wrongful death claims, even where they had allowed for only a more circumscribed compensatory damages in the wrongful death space, suggests that State legislatures did not view an inconsistency between punitive damages, which were done to deter, and compensatory damages, which needed to look at the economic realities of what the deceased worker was providing as livelihood to his or her family. And so for that reason, the wrongful death area has a very long and different lineage, and therefore also gives rise to different views about how the interplay between this Court acting under its powers of the general maritime law should interface with the areas where Congress has spoken in the area of wrongful death. And so the other question, which was, you've talked about the deterrent value of the punitive damages. We have an impressive array of amicus briefs on the other side from you that use severe language saying this would harm the maritime industry and the national economy. So I just wanted to give you an opportunity to respond to those amicus briefs. Thank you, Justice Kavanaugh. I'm happy to do that, because notwithstanding all the rhetoric, there is no citation of any situation where a particular holding created the kind of economic harm that they expostulate. And this is an important thing, as was pointed out, that for decades punitive damages have been allowed in unseaworthiness claims in the Ninth Circuit and the Eleventh Circuit, both two of the major maritime circuits. And if that harm were to come to pass, you would have expected to see some evidence of that. But in fact, there is no evidence of that. And I accept that many of the employers on the other side would rather not face the specter of having their own willful and wanton misconduct punished. But I would submit that part of the objective of the law is to deter people from acting in a way where the cost-benefit analysis is such that you want to make the willful harm is going to result or at least be put at substantial risk. So for these reasons, notwithstanding the array of the amici on the other side, I would ask you to look at what the actual evidence that they cite, and it's very, very scant. And in fact, what this Court in the Exxon v. Baker case did was to look at the evidence of the effect of punitive damages. Of course, there, there was an extraordinarily high compensatory award, and this Court concluded that notwithstanding the very high, over half a billion dollar compensatory award, that punitive damages was also available. For the interests of the seat worker, the crew member, who was often working at very, very low wages, the idea that you would cut off the one incentive that the employer has to ensure that there's a safe workplace for a functioning vessel would be extremely hazardous, I would submit.  Sotomayor I'm sorry, I thought you told me the operators were different than the ship owners in many cases. So would unseaworthiness still be available to the sea worker against the operator? Your Honor, the answer to your question depends on what kind of charter is arranged between the owner of the vessel and the operator of the vessel. For a bareboat charter, which was an operation in our case, the operator stands in the shoes by virtue of some very late 19th century law about the effect of bareboat charters in creating an owner pro hoc vitae for this purpose. In many other instances, the employer is not acting as the owner pro hoc vitae, and it depends on the particular chartering arrangement that is established between the owner and the employer. Breyer. Yes, Your Honor. I noticed that in the Heaton, it came from the District of Massachusetts, which was the original admiralty court, and they still have to put an oar over the judge's head. And at the end of that, it says that the A-Hit-E is a case of injuries arising from unseaworthiness or negligence was sued, although the learned judge does not draw a distinction. With that, Your Honor, we'll rest. I have no further words. Roberts. Thank you, counsel. Three minutes, Mr. Waxman. Thank you. I just have a few points. Justice Breyer, with respect to the laundry list of little things that are different, it's not our contention. There is no question that even in 1920, in the 1920s, this Court repeatedly said that these are, that the Jones Act is an alternative remedy for loss resulting from wrongfully caused injury. And nowadays, I cannot think of a case, and no one has cited one, in which you could get a recovery under the Jones Act, but not for unseaworthiness. These specific differences between the two were well known to the Court in Miles. They were well known to the Court in Peterson and all the other cases that have said that the two are substitutes for each other. On the other hand, vis-à-vis maintenance and cure, the notion that, well, because there could be cases where there is injury suffered after and as a result of a failure to undertake the humane duty of maintenance and cure, and that could be brought under the Jones Act, well, they both overlap. Consider this. In its very first decision, after the Jones Act was enacted in the Baltimore Steamship case and then again in Peterson, this Court explained that race judicata applies as between a Jones Act cause of action and an unseaworthiness cause of action. That is not true with respect to maintenance and cure. For that reason, a Jones Act claim and an unseaworthiness claim must be brought at the same time, emphatically not true for maintenance and cure. The Court has held that the 3-year statute of limitations for causes of action under general maritime law applies to maintenance and cure, but following enactment of the Jones Act can no longer be applied to unseaworthiness because they are cognate causes of action for the same injury and therefore the shorter statute of limitations under the Jones Act governs. The evidence with respect, Justice Ginsburg, the evidence of punitive damages in unseaworthiness cases with all due respect is not slim. It is utterly nonexistent. And it's utterly nonexistent because at the time that this Court and English courts were recognizing that punitive damages, exemplary damages could be applied in maintenance and cure, and the treatise writers all obligingly verified that, even compensatory damages were not available for a violation of the general maritime law of unseaworthiness. Thank you. Roberts. The case is submitted.